1997-NMSC-049

946 P.2d 205

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Harvey ASHLEY, Defendant–Petitioner.**

No. 23494.

Supreme Court of New Mexico.

Sept. 17, 1997.

T. Glenn Ellington, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for Defendant–Petitioner.

Tom Udall, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, for Plaintiff–Respondent.

## OPINION

FRANCHINI, Chief Justice.

1 Harvey Ashley was convicted of one count of bigamy under NMSA 1978, Section 30–10–1 (1963). Because bigamy is a fourth-degree felony, and because, following his conviction, Harvey Ashley was found to be a habitual offender, he was sentenced to nine and a half years incarceration. Harvey Ashley appealed to the Court of Appeals on several grounds including his argument that, during trial, the Prosecutor's misconduct de-

nied him a fair trial. The Court of Appeals affirmed the conviction in a memorandum opinion, and found there was no prosecutorial misconduct. Harvey Ashley appeals to this Court. We hold that, when viewed cumulatively, the impact of prosecutorial misconduct was so prejudicial that Harvey Ashley was denied a fair trial. We reverse the conviction and remand for a new trial.

2 *Background Facts.* Harvey and Denee Ashley were married in 1986 in Buffalo, New York. They moved to Albuquerque, New Mexico and had a daughter in 1988. The marriage deteriorated, and in 1992 both parties were prohibited by court order from having contact with each other. At a custody hearing in 1992, Denee Ashley represented, through her attorney, that she had paid $1500.00 for a divorce, that divorce proceedings were underway, and that divorce papers were being drawn up. Because of a dispute between Denee Ashley and her attorney concerning legal fees, her attorney did not proceed with the divorce.

3 Harvey Ashley moved to Clovis, New Mexico, and, in May of 1993, he married Viola Perry. Denee Ashley heard of the marriage and, in early 1994, contacted the sheriff's office in Clovis. She informed a deputy that she believed Harvey Ashley, to whom she was married, had remarried, and was living in Clovis. The deputy went to Harvey Ashley's house, advised him of the complaint, and inquired whether Harvey Ashley was still married to Denee Ashley. Harvey Ashley answered that he was divorced from Denee Ashley and, in response to additional questions, that he did not know where divorce papers were filed. The deputy searched the court files in each district in New Mexico and determined that Harvey and Denee Ashley were not divorced. After being notified that he was still married to Denee, Harvey Ashley filed for divorce.

4 *Facts at trial.* At trial, Harvey Ashley defended that he did not know he was still married to Denee Ashley at the time he remarried, and therefore he could not be convicted of bigamy which requires knowledge.[1] To show that Denee Ashley's com-

---

1. "Bigamy consists of knowingly entering into a    marriage by or with a person who has previously

plaint of bigamy was groundless, he introduced evidence that during the time of the breakup of the marriage she had been instrumental in having other charges brought against him which were subsequently dropped. The State argued that this opened the door to the substance of the charges brought by Denee. The trial court, however, limited the State to introducing evidence concerning how charges are brought, and ruled that evidence concerning the substance of the charges was inadmissible because it would confuse the jury.

5 The State proceeded on the theory that Harvey Ashley was sufficiently familiar with the law and the legal system to know that he was not divorced from Denee Ashley at the time he remarried. Harvey Ashley's legal knowledge was acquired following criminal charges brought against him over many years. Although some charges against him had been dismissed, at the time of this trial Mr. Ashley did have three convictions: in 1960 in New York for attempted forgery, in 1985 in Florida for delivery of cocaine, and in 1992 in New Mexico for fraud.

6 When questioning an attorney who represented Harvey Ashley in another criminal trial, the Prosecution asked him about past criminal cases, whether this attorney knew Harvey Ashley had a forty-year legal history, whether Harvey Ashley knew the ins and outs of grand juries, and whether he had more than a layperson's knowledge of the grand jury system. The Defense made several objections and requested a mistrial. While defense counsel argued that the jury now knew that Harvey Ashley had a criminal record, the Prosecutor argued that the jury could believe that Harvey Ashley's contact with the law concerned civil matters only, as the word "criminal" had not been used. The judge ruled that if the Prosecutor elicited any other evidence which directly or indirectly implied that Harvey Ashley had a criminal record a mistrial would be declared.

7 *Discussion. This Court has jurisdiction under Section 34–5–14(B).* The State asks that we quash the writ of certiora-ri granted in this case. We first address their argument that the issue in this case is not appropriate for this Court's jurisdiction by writ of certiorari under *State v. Conn,* 1993 NMSC 004, 115 N.M. 99, 847 P.2d 744, because it involves the weighing or reviewing of factual issues which have been resolved by the Court of Appeals.

8 In *Conn* we quashed certiorari where we were asked to review a decision of the Court of Appeals that the trial court had abused its discretion in admitting evidence of a prior conviction. *Conn,* at ¶ 11. We held that in that case we were asked "to resolve mere factual conflicts" and, for this reason, "the issue . . . was not . . . an appropriate one for the exercise of our jurisdiction by writ of certiorari." *Conn,* at ¶ 7.

9 In this case, while the facts of the case certainly constituted a part of the trial court's consideration in reaching the conclusion that the prosecution's questions and statements did not constitute prosecutorial misconduct warranting a mistrial, the trial court's determination involved a question of law: whether a mistrial should have been granted, considering all of the correctly and erroneously admitted evidence. For this reason we reject the State's request that we quash the writ of certiorari on grounds similar to those we articulated in *Conn.*

10 Section 34–5–14–(B)(3) (1972) provides that "the supreme court has jurisdiction to review by writ of certiorari to the court of appeals any civil or criminal matter in which the decision of the court of appeals . . . involves a significant question of law under the constitution of New Mexico or the United States . . . ." Defendant claims he was denied a fair trial, a constitutional right protected by both the New Mexico and United States Constitution. *See* NM Const. art. II, § 14 (as amended 1980); U.S. Const. amend. VI. We note jurisdiction to address Ashley's claims pursuant to Section 34–5–14(B)(3). We review the issue of prosecutorial misconduct in this case, because we are persuaded Defendant was denied a fair trial.

contracted one or more marriages which have not been dissolved by death, divorce or annul-

ment." NMSA 1978, § 30–10–1.

**4**

**11** *Improper character evidence was introduced against the defendant.* A prosecutor may not introduce evidence of a defendant's criminal record unless the defendant testifies or otherwise puts his character in issue. *See* 1A John Henry Wigmore, *Evidence in Trials at Common Law* § 57, at 1185 (revised by Peter Tillers) (1983); *State v. Gutierrez*, 93 N.M. 232, 234, 599 P.2d 385, 387 (Ct.App.1979). The admissibility of character evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Allen*, 91 N.M. 759, 761, 581 P.2d 22, 24 (Ct.App.1978). In this case the Defendant did not take the stand nor did he place his character in issue. The defendant did not open the door to his criminal background by offering the defense that he did not know he was still married to Denee Ashley at the time he remarried. Nonetheless the Prosecutor, knowing he could not elicit evidence of the Defendant's criminal record directly, did so indirectly, first by asking Defendant's attorney whether he knew about Defendant's forty-year legal history, and then by repeatedly asking about Defendant's familiarity with the grand jury system. Defendant contends that the trial court erred in allowing the Prosecutor to present evidence which indirectly informed the jury of his criminal history, depriving him of a fair trial.

**12** In *Gutierrez*, the Court held that it would "no longer tolerate prosecutorial reference to 'mugshots' or 'mugbooks'" since that reference may reveal to the jury that the Defendant has a criminal record. *See id.* at 236, 599 P.2d 385. The Court found that evidence of guilt was overwhelming, and for this reason did not overturn Defendant's conviction, although the prosecutor elicited testimony that witnesses identified the defendant's picture from "mugshots." *Id.* At that time our Court of Appeals cautioned that "We will no longer tolerate ... those who, well knowing the insidious impact of prejudicial evidence, nevertheless insist upon getting before a jury inadmissible or even slightly probative but highly questionable, facts." *Id.* In this case, evidence of the Defendant's guilt was not overwhelming. Like the "mugshots" in *Gutierrez*, the prosecutor, by referring to Defendant's forty-year legal history and

knowledge of grand juries, disclosed that the Defendant had a criminal history. As the *Gutierrez* Court stated, under these circumstances, reversal is warranted. *Id.* However, while the *Gutierrez* Court declined to reverse because there was overwhelming evidence of the defendant's guilt, we find no overwhelming evidence of Harvey Ashley's guilt in the instant case.

**13** We believe that when the prosecutor asked questions concerning defendant's forty-year legal history, and especially about his knowledge of the grand jury system, the jury in this case was made aware that Harvey Ashley had a criminal record. Our system allows for the introduction of a defendant's criminal record under specific and limited circumstances. "[T]he prosecutor must present his proof consistent with a broad array of constitutional, statutory, evidentiary, and ethical proscriptions designed to minimize prejudice to the defendant and assure him a fair trial." Bennett L. Gershman, *Prosecutorial Misconduct*, 9–3 (Release # 11, 1996). In the absence of those circumstances we will not permit the prosecutor to bring evidence of a defendant's character before the jury. Allowing the prosecutor to allude to a defendant's criminal background whenever knowledge is an element of the crime is inconsistent with the general prohibition against such an allusion.

**14** Since knowledge is an element of the crime of bigamy, the prosecutor was properly permitted to introduce evidence of defendant's legal knowledge. This evidence is admissible to rebut Defendant's defense that he did not know he was not divorced when he remarried. (A variety of avenues may exist for the prosecutor to elicit this information. However, the prosecutor may not disclose or imply to the jury that the Defendant had a criminal record). It was improper for the prosecution to ask questions or make comments that communicated to the jury that the defendant had a criminal background.

**15** *The prosecutor improperly made comments intended to inflame the passions and prejudices of the jury.* In addition to suggesting to the jury that Harvey Ashley

had a criminal record, the Prosecutor attacked the Defendant's character, generally insinuating that he was a wicked person. Evidence which improperly appeals to the passions and prejudices of the jury should be excluded. *See State v. Boeglin,* 105 N.M. 247, 253, 731 P.2d 943, 949 (1987). We conclude that the prosecutor's repeated attacks on Harvey Ashley's character were improper appeals of this kind. These appeals began in the prosecutor's opening statement, when he emphasized several times that Harvey Ashley left his wife and daughter destitute, and extended to closing, when he asked the jury rhetorically "who pays when people are forced to go on welfare and use food stamps." Through his questions and comments the Prosecutor improperly communicated to the jury that Harvey Ashley was a bad person and a burden on society.

16 It is not proper to make the defendant "appear [to be] an evil person before the jury." *State v. Diaz,* 100 N.M. 210, 214, 668 P.2d 326, 330 (Ct.App.1983). The financial condition and lifestyle of Denee Ashley and the daughter of Harvey and Denee Ashley were not, in our view, relevant to the charge of bigamy, and these comments improperly inflamed the jury. "The deep tendency of human nature to punish not because our victim is guilty this time but because he is a bad man and may as well be condemned now that he is caught is a tendency that cannot fail to operate with any jury, in or out of court." Wigmore, supra § 57, at 1185.

17 Moreover, Defendant objected to the statement "who pays when people are forced to go on welfare and use food stamps" arguing that this improperly placed the jurors in the role of victims in this case. We agree that this personal appeal to the jurors was improper.

18 *The prosecutor improperly implied that guilt had been determined.* A prosecutor may not imply that guilt has been determined by a judicial officer. *See State v. Baca,* 1995 NMSC 053 ¶ 37, 120 N.M. 383, 392, 902 P.2d 65, 74. In this case the prosecutor elicited testimony from the deputy who investigated the case following Denee Ashley's report that, in his opinion, the offense of bigamy had been committed. The following "hypothetical" was presented by the Prosecutor to the deputy:

> Question: "If you were in the process of getting a divorce and you remarried another person are you committing bigamy?"
>
> Answer: "As I understand the elements of the crime in New Mexico."
>
> Question: "Is there any doubt in your mind whatsoever, the way the statute reads?"
>
> Answer: "My understanding of the elements of the crime on the statute that would fulfill the level of proof necessary to call the charge."
>
> Question: "What you are telling us is that person would have committed the offense of bigamy?"
>
> Answer: "Yes."

19 In *Baca,* "the trial court admonished the jury to disregard the prosecutor's statement and later expressly determined that the jury's decision was not affected by the statement." 1995 NMSC 053 ¶ 37, 120 N.M. 383, 902 P.2d 65. In this case no admonition was given or determination made by the trial court. The prosecutor's "hypothetical" was composed of facts identical to the facts of Harvey Ashley's case, and it was improper to ask the deputy whether, under the circumstances of that "hypothetical," the crime of bigamy had been committed. Although a deputy is a law enforcement officer and thus different from a judicial officer, we believe it is improper for a law enforcement officer to give his opinion as to the ultimate issue in the case.

20 Although this issue is raised on appeal, the deputy's testimony was not objected to at trial and thus not preserved. However, we caution the prosecution on remand to avoid having a law enforcement officer testify directly, or indirectly imply, that guilt has been determined.

21 *Defendant was denied a fair trial under the doctrine of cumulative error.* We must reverse a conviction "when the cumulative impact of errors [that] occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Mar-*

*tin,* 101 N.M. 595, 600–01, 686 P.2d 937, 942–43 (1984). We must consider whether, taken as a whole, the prosecutor's misconduct deprived defendant of a fair trial. *See Diaz,* 100 N.M. at 215, 668 P.2d at 331. In this case the trial court allowed the prosecutor to introduce improper character evidence and made comments intended to inflame the passions and prejudices of the jury. Under the doctrine of cumulative error we conclude that the defendant was denied a fair trial.

22 *Conclusion.* For the foregoing reasons the judgment of the trial court is reversed, and this case is remanded for a new trial on the bigamy charge.

23 IT IS SO ORDERED.

MINZNER, SERNA and McKINNON, JJ., concur.

BACA, J., dissenting.

BACA, Justice, Dissenting.

(24) I respectfully disagree with the majority's opinion reversing the conviction of the Defendant. The jury is the fact-finder and this Court does not reweigh the evidence and will not substitute its judgment for that of the jury. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). On appeal, the Court looks to see whether the verdict is supported by substantial evidence, not whether the jury could have reached a different conclusion. *State v. Apodaca,* 1994 NMSC ¶ 4, 118 N.M. 762, 766–67, 887 P.2d 756, 760–61. Further, I do not believe that this case involves a substantial question of law under the Constitution of New Mexico or the United States, or presents an issue of substantial public interest and therefore, certiorari should be quashed. Rule 12–502 C(4)(c) and (d) NMRA 1997; *State v. Tackett,* 78 N.M. 450, 452, 432 P.2d 415, 416 (1967).

(25) Regarding the question of prosecutorial misconduct, I agree with the Court of Appeals' analysis. The State couched any reference to the Defendant's legal history in general terms consistent with the State's theory of the case. The State elicited this evidence only to prove that the defendant was knowledgeable in legal matters. The State only briefly mentioned the Defendant's legal history and then in context. After the de-

fense attorney's objection, the prosecutor quickly moved to the facts of the case. Moreover, because the State rarely prosecutes bigamy, the trial court did not abuse its discretion in allowing the prosecutor to explain the policy reasons behind the crime. *See* Rule 11–403 NMRA 1997; *Behrmann v. Phototron Corp.,* 110 N.M. 323, 326, 795 P.2d 1015, 1018 (1990).

(26) The alleged prosecutorial misconduct, even when viewed cumulatively, is not enough to outweigh the evidence of guilt in this matter. *State v. Larson,* 107 N.M. 85, 86, 90, 752 P.2d 1101, 1102, 1106 (Ct.App. 1988). Further, there is a question what defendant urges as prosecutorial misconduct rises to that level at all. *State v. Ramming,* 106 N.M. 42, 47, 48, 738 P.2d 914, 919–20 (Ct.App.1987).

(27) For these reasons, I respectfully DISSENT.