**Certiorari Denied, September 5, 2013, No. 34,228**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-092**

**Filing Date:  June 6, 2013**

**Docket No. 30,349**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**MONICA RAEL-GALLEGOS,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**    Defendant Monica Rael-Gallegos appeals her conviction of trafficking, by possession with intent to distribute cocaine.  She argues:  (1) there was insufficient evidence to support the jury's verdict, (2) she was denied her right to confront her accuser, (3) the district court erred in admitting testimony of the State's expert witness, and (4) ineffective assistance of counsel.  We affirm.

1

**BACKGROUND**

**{2}**     In July 2007, Defendant was detained by Officer Jose Sanchez of the Albuquerque Police Department who found her at the intersection of Coors Boulevard and Central Avenue in Albuquerque, New Mexico, "passed out at the wheel" of her vehicle at approximately 4:00 a.m.  After several attempts, Officer Sanchez succeeded in waking Defendant and requested that she step out of the vehicle. Defendant complied, and as she stepped out of the vehicle, a small plastic bag containing what the officer believed to be crack cocaine fell out of her purse and onto the ground.  Defendant admitted to having "smoked crack [cocaine] about an hour . . . , prior to being stopped" by police.

**{3}**     Officer Sanchez arrested Defendant and conducted an inventory search of the vehicle.  He did a second inventory search after Defendant informed him that she had money in the console of the vehicle.  Among the evidentiary items found in the vehicle during the two inventory searches were sandwich bags, three cell phones, two separate amounts of cash, a crack pipe, and a second bag in the console of the vehicle containing what the officer believed to be crack cocaine.  The substance from the bags was later confirmed by laboratory testing to be cocaine with a combined weight of 3.46 grams.  Officer Sanchez counted the two amounts of cash that totaled $520.

**{4}**     Based on the amount of crack cocaine, the baggies, the multiple cell phones and the amount of cash in the vehicle, Officer Sanchez's training and experience led him to believe that Defendant was "a trafficker."  Defendant was charged accordingly, with trafficking cocaine, among other crimes.  Defendant was brought to trial before a jury in May 2009.

**{5}**     Among the State's witnesses was Sergeant Andrea Taylor, who was qualified as an expert in differentiating personal use versus trafficking amounts of crack cocaine.  During trial, Sergeant Taylor examined the crack cocaine that Defendant was alleged to have possessed at the time of her arrest and she testified that she counted approximately nineteen "rocks."  She provided the caveat, however, that because the evidence had been collected in 2007, some pieces may have "chipped off" and thus, it was not fair to say how many rocks comprised the evidence in 2007.  In addition to this and other testimony, Sergeant Taylor also testified as to some things that a crack cocaine "dealer" might have in his or her possession.  These items included ledgers, crack packaged for sale, multiple cell phones, paraphernalia (either straws or needles to ingest powder cocaine, or pipes to smoke crack cocaine),  weapons, large amounts of money, scales, baggies, or a "bunch of bags with the ends cut off."  Sergeant Taylor stated, however, that someone who possesses drugs and the drug-related items that she described was not necessarily a drug trafficker.  Further background regarding Sergeant Taylor's testimony and other aspects of the trial will be provided as relevant throughout this Opinion.

**{6}**     The jury found Defendant guilty of trafficking, among other crimes.  She appeals from the trafficking conviction.  Defendant argues that there was insufficient evidence to prove that the cocaine found in the console of the vehicle was hers, and therefore, that there

was insufficient evidence to support the trafficking conviction.  She also argues that her confrontation right was violated by Officer Sanchez's testimony regarding the amount of money that was found in her vehicle.  Further, she argues that Sergeant Taylor should not have been qualified as an expert, that her testimony exceeded the bounds of permissible expert testimony, and that it was more prejudicial than probative.  Finally, she argues that she did not receive effective assistance of counsel.

**DISCUSSION**

**I.      Sufficiency of the Evidence**

**{7}**      Defendant challenges the sufficiency of the evidence to support the jury's verdict as to the trafficking charge.  Defendant concedes that there was substantial evidence to prove "that she possessed *some* cocaine," that is, the cocaine that fell to the ground when Defendant got out of the vehicle. Defendant claims, however, that the State failed to present sufficient evidence that she possessed the additional cocaine that was found in the center console.  Further, based on her claim that the cocaine found in the center console was not in her possession, Defendant argues that there was insufficient evidence to prove that she "intended to transfer the cocaine to another."

**{8}**      "In reviewing the sufficiency of the evidence in a criminal case, we must determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue." *State v. Armijo*, 2005-NMCA-010, ¶ 4, 136 N.M. 723, 104 P.3d 1114.  "Resolving all conflicts, indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary, [we view the] evidence in the light most favorable to the verdict to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt." *Id.*  "[I]t is for the fact-finder to evaluate the weight of the evidence, to assess the credibility of the various witnesses, and to resolve any conflicts in the evidence; we will not substitute our judgment as to such matters." *Id.*  We will not re-weigh the evidence. *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057.

**{9}**      The jury was instructed that, to find Defendant guilty of trafficking, the State was required to prove that Defendant had cocaine in her possession, knew or believed it to be cocaine, and intended to transfer it to another.  Defendant's sufficiency of the evidence attack is limited to the cocaine that was found in the center console.  The cocaine that dropped to the ground is not at issue.  Defendant argues that there was insufficient evidence to prove that the cocaine in the center console was hers.  Then, building on that premise, she argues there was insufficient evidence to support a trafficking charge.

**A.      The Cocaine in the Center Console**

**{10}**      Defendant argues that because she directed police toward the center console, by telling Officer Sanchez that she had money stored there, "it defies reason" to infer that

3

Defendant owned the cocaine that was also in the center console because, had Defendant known that the cocaine was in the console, she would not have "point[ed] Officer Sanchez to search" there. Additionally, in an apparent attempt to preemptively rebuff the State's argument that Defendant admitted to Officer Sanchez that the cocaine in the center console was hers, Defendant attacks Officer Sanchez's testimony for being "impossibly vague" and therefore "meaningless." Further, Defendant argues that "in the absence of any admission" of ownership of the cocaine in the center console, and absent evidence "that she was in exclusive possession of the vehicle," any theory of constructive possession lacks viability.

**{11}** Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there existed substantial evidence from which the jury could conclude that Defendant possessed the cocaine found in the center console. Officer Sanchez testified that Defendant told him, "[t]hat there was money inside the vehicle, and it was in the center console." Accordingly, he went back to the vehicle and removed a bag that he found in the console. Inside that bag he found $392 along with "a small bag with the off-white substance . . . , consistent with crack cocaine." In response to the State's question, "did . . . [D]efendant mention anything about whose crack that was[,]" Officer Sanchez testified that Defendant "stated it was hers." Viewed in the context of the prosecutor's questions which were, during the foregoing aspect of the State's examination of Officer Sanchez, limited to the subject of the cocaine found in the console, the jury could reasonably infer that Defendant admitted to Officer Sanchez that the cocaine in the console was hers. Moreover, Defendant was the registered owner and the sole occupant of the vehicle from which the cocaine was retrieved. The cocaine was found in the center console of the vehicle inside of a bag that also contained money, to which Defendant had directed Officer Sanchez. From these facts, the jury could reasonably infer that Defendant possessed the cocaine.

**{12}** We see no reasonable basis for Defendant to discuss constructive possession. The jury was not instructed as to constructive possession, nor, during trial, did the State rely on a theory of constructive possession to prove its case. Defendant's reliance on *State v. Becerra*, 112 N.M. 604, 817 P.2d 1246 (Ct. App. 1991), and *State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (Ct. App. 1974), for the analyses in those cases of constructive possession is misplaced. Those cases are inapplicable under the facts of this case.

**{13}** As to Defendant's argument that "it defies reason" to assume that she would alert Officer Sanchez to the money if she knew that he would inevitably find the cocaine, we do not find this argument persuasive. While this line of reasoning could suggest that Defendant was unaware of the presence of cocaine in the console, it is not the purview of this Court to search for inferences to support a verdict contrary to the jury's. *See State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285. In sum, we conclude that there was sufficient evidence from which the jury could reasonably conclude that Defendant was in possession of the cocaine that was found in the console of her vehicle.

**B.    Trafficking**

4

**{14}** As to the sufficiency of the evidence to support the jury's determination that Defendant intended to transfer the cocaine to another, Defendant's argument rests on the premise that she possessed only the cocaine that fell to the ground when she got out of her vehicle. Defendant argues "the insufficiency of evidence that Defendant possessed the cocaine found in the console undermines Defendant's conviction for trafficking. Specifically, possession of a single rock of cocaine does not establish trafficking[.]" Having already rejected the premise of this argument by concluding that sufficient evidence supported the jury's determination that she possessed all of the cocaine at issue, we find Defendant's argument unpersuasive.

**{15}** We conclude that sufficient evidence existed to support the jury's finding that Defendant was guilty of trafficking cocaine. Defendant possessed the cocaine that fell to the ground and also the cocaine found in the console of the vehicle. The jury's verdict was further supported by other evidentiary items and by testimony, including that of Officer Sanchez, who stated that based on the amount of cocaine that was found, the sandwich bags, the multiple cell phones, and the amount of cash that was in the truck, his training and experience led him to believe that Defendant was "a trafficker." Officer Sanchez's testimony in that regard was elicited by Defendant's own counsel, who asked Officer Sanchez, "[w]hy did you believe [that] you had a trafficker?" Defendant's sufficiency argument does not provide a basis for reversal.

## II.   Confrontation

**{16}** Defendant argues that her Sixth Amendment right to confront her accuser was violated by Officer Sanchez's testimony regarding the amount of cash found in her vehicle and the denominations thereof. Defendant did not, in district court, make a confrontation argument regarding Officer Sanchez's testimony. Accordingly, the State argues, and we agree, that the confrontation argument was not preserved. *See* Rule 12-216(A) NMRA ("To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]"). This argument will not be considered further on appeal. *See State v. Garcia*, 2013-NMCA-005, ¶ 9, 294 P.3d 1256 (stating that we will not consider unpreserved constitutional arguments).

## III.   The Expert Witness Issue

**{17}** Over Defendant's objections, the district court admitted the testimony of Sergeant Taylor, who testified as an expert in distinguishing between personal use and trafficking amounts in terms of crack cocaine. On appeal, Defendant argues that Sergeant Taylor should not have been qualified as an expert, that her testimony was more prejudicial than probative, and that her testimony exceeded the bounds of permissible expert testimony. We review for an abuse of discretion the admission or exclusion of an expert's testimony; however, "the threshold question of whether the . . . court applied the correct evidentiary rule or standard is subject to de novo review[.]" *State v. Torres*, 1999-NMSC-010, ¶¶ 27-28, 127 N.M. 20, 976 P.2d 20.

5

## A. Sergeant Taylor Was a Properly Qualified Expert

**{18}** "Under Rule 11-702 NMRA, a witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible." *State v. Torrez*, 2009-NMSC-029, ¶ 15, 146 N.M. 331, 210 P.3d 228 (internal quotation marks and citation omitted). Rule 11-702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if such testimony will assist the trier of fact. In examining Rule 11-702, our Supreme Court has emphasized that "the disjunctive 'or' in Rule 11-702 permits a witness to be qualified under a wide variety of bases[.]" *State v. Downey*, 2008-NMSC-061, ¶ 26, 145 N.M. 232, 195 P.3d 1244. "[N]o set criteria can be laid down to test such qualifications." *Torrez*, 2009-NMSC-029, ¶ 15 (internal quotation marks and citation omitted). The testimony of police officers that are qualified as experts "is admissible even if it touches upon [the] ultimate issue to be decided by the [jury]." *State v. Torres*, 2005-NMCA-070, ¶¶ 27, 32, 137 N.M. 607, 113 P.3d 877 (internal quotation marks and citation omitted); *State v. Landgraf*, 1996-NMCA-024, ¶ 20, 121 N.M. 445, 913 P.2d 252.

**{19}** Defendant relies on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993), to provide the basis for her argument that Sergeant Taylor was not properly qualified as an expert. She argues that Sergeant Taylor was not qualified to testify as an expert because "no one else with [Sergeant Taylor's] experience or expertise had published on the subject of possession of a controlled substance for use versus possession for distribution, and no one else taught a similar subject." She also argues that Sergeant Taylor's "methodology" was flawed because it "was based on interviewing confidential informants, arrestees, and random pedestrians[.]" Defendant further attacks Sergeant Taylor's research "methodology" on the basis that it is "circular," and she questions the reliability of Sergeant Taylor's "test subjects." Further, Defendant argues that Sergeant Taylor's testimony was comprised of "guesse[s]" and contradictions, and that her experience as an undercover officer may have rendered her "an expert in the amount of cocaine an undercover officer could safely purchase[,]" but not an "expert in how much cocaine would *typically* be purchased for use rather than distribution."

**{20}** *Daubert* and *Alberico* set forth the standards of admissibility for scientific evidence. *Daubert*, 509 U.S. at 592-95; *Alberico*, 116 N.M. at 167-68, 861 P.2d at 203-04. Our Supreme Court has recognized a distinction between the standards applicable to admitting scientific testimony and admitting testimony that is based on specialized knowledge. *Torrez*, 2009-NMSC-029, ¶¶ 20-21. Unlike scientific testimony, which must be "grounded in valid, objective science and reliable enough to prove what it purports to prove," in determining whether to admit non-scientific expert testimony, "the court must evaluate [the] . . . expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted." *Id.* ¶ 21 (internal quotation marks and citation omitted). It is clear from the record in this case that Sergeant Taylor was accepted as an expert based on her knowledge and experience, as opposed to any purported scientific basis of expertise. Therefore, Defendant's reliance on *Daubert* and *Alberico* is misplaced. *See Torrez*, 2009-

6

NMSC-029, ¶ 21.

**{21}** Rather than applying the *Daubert* or *Alberico* standards to Sergeant Taylor's qualifications, we must instead consider whether Sergeant Taylor's knowledge and experience were sufficient to support a determination that her conclusions regarding the distinction between personal use amounts versus trafficking amounts of crack cocaine may be trusted. *See Torrez*, 2009-NMSC-029, ¶ 21 (stating the standard for admissibility of non-scientific expert testimony). Sergeant Taylor testified that she had worked for the Bernalillo County Sheriff's Department for eight years. As a cadet in the police academy, she had received training in basic narcotics recognition and basic narcotics interdiction, which she described as "interrupting when people are bringing large loads of narcotics from a different state into ours." Early in her career, her duties included being "on patrol in the field" during which time she investigated three to five hundred drug-related offenses. After "about three-and-a-half years of patrol," Sergeant Taylor was promoted to detective in narcotics, for which position she underwent written and oral tests, among other requirements.

**{22}** As a narcotics detective, Sergeant Taylor received "a substantial amount of training[,]" including "approximately 360 hours of advanced narcotics training." She also did undercover work, worked on a task force with "numerous federal agencies," and she "earned the right to be . . . an instructor of narcotics at [the police] academy[] to citizen groups, as well as the district attorney's office." In her total time with the department, Sergeant Taylor estimated that she had done about a thousand drug investigations. After spending almost four years as a narcotics detective, she was promoted to sergeant.

**{23}** In addition to her formal training, Sergeant Taylor testified that she learned about narcotics use and sales from interviewing every one of the approximately one thousand people who she arrested and some people who she did not arrest, but who she could tell were "going through a rough time[.]" She would ask these individuals whether they had a habit, whether they used and sold or just sold, how they used the narcotics, if they did use, whether and how they packaged their narcotics, where their best hiding spot was, what the slang terms were, how much did they use, how much did they spend on narcotics, and other information relevant to narcotics use and trade. Sergeant Taylor also testified as to her experience investigating narcotics in an undercover capacity, which she did approximately three times per week, twelve hours per day for almost four years. As an undercover officer, she purchased drugs, including crack cocaine. Based on her experience and from "talking with numerous people" when she set out to purchase crack cocaine under the guise of it being for herself, she limited her purchase to five rocks because that was "not a crazy amount to have[,]" and it was an amount that "could be used in a day." She testified that once, with a story that she was a stripper, and planned to resell it at a club, she purchased twelve rocks.

**{24}** Since 2006 and continuing through the time of trial, Sergeant Taylor was the lead instructor for the basic law enforcement academy in Bernalillo County, and she taught narcotics investigation and recognition, among other classes, to all of the new hire cadets.

7

Sergeant Taylor's narcotics investigations course includes a segment "on what are trafficking amounts, [and] what are possession amounts[.]" That segment of the class also involves "evidence that you can look for in a stop that might help" to make such a distinction, including recognizing evidence of "packaging, scales, firearms, cell phones, admissions, [and] ledgers[.]" Additionally, among her narcotics-related teaching experiences, Sergeant Taylor has presented at "high intensity drug trafficking area" conferences, and she has taught "narcotics awareness, trafficking versus possession amounts" and other "things of that nature" to the district attorney's office. Sergeant Taylor further testified that since 2006, she had been qualified as an expert in the Second Judicial District approximately four times to testify as to the difference between trafficking and possession.

{25}   Rule 11-702 expressly allows experts to be qualified based on their knowledge, experience, training, and education, and Sergeant Taylor's experience spanned the gamut of the field of narcotics investigation, undercover work, and teaching, equipping her with sufficient knowledge and experience to testify as an expert in distinguishing between possession and trafficking narcotics. Based on the evidence of Sergeant Taylor's background, experience, and knowledge in drug transactions, we cannot say that the district court abused its discretion in qualifying Sergeant Taylor as an expert in differentiating between possession amounts and trafficking amounts of crack cocaine. Defendant's argument to the contrary provides no basis for reversal.

**B.     Sergeant Taylor's Testimony Was Within the Bounds of Allowable Expert Testimony**

{26}   To demonstrate the basis of Defendant's next argument, we present the portion of Sergeant Taylor's testimony asserted by Defendant to be objectionable.

> [Prosecutor:] Now, you stated that you've encountered individuals who have sold crack cocaine in the field.
>
> [Sergeant Taylor:]  Yes.
>
> [Prosecutor:]  Have you arrested any?
>
> [Sergeant Taylor:]  Yes.
>
> [Prosecutor:]  Can you please tell the jury some of those experiences. Very specifically, those prior experiences, how many rocks does a typical [trafficker], low-level [trafficker], carry with them?
>
>  . . . .
>
> [Sergeant Taylor:]  It can be a couple of grams.  The rocks are really light,

8

so it's always better to speak in terms of the rocks. Maybe about—some have had 50, and some have had as little as, you know, 12, 13.

[Prosecutor:] Okay. And based on your training and experience, how much, typically, does a person who simply possesses—or for personal use, crack cocaine, have on their person?

[Sergeant Taylor:] Anywhere from five to one to maybe a half of one.

[Prosecutor:] Have you seen anybody who has possessed—encountered them, arrested them, investigated them—19 rocks of crack cocaine?

[Sergeant Taylor:] For possession?

[Prosecutor:] For trafficking?

[Sergeant Taylor:] For trafficking, yes.

[Prosecutor:] How about for possession?

[Sergeant Taylor:] No.

[Prosecutor:] Did you charge that person with trafficking?

[Sergeant Taylor:] Yes.

[Prosecutor:] How about with 18 rocks of crack cocaine?

[Sergeant Taylor:] I've charged trafficking.

[Prosecutor:] And 17 rocks?

[Sergeant Taylor:] I would charge trafficking.

[Prosecutor:] 16 rocks?

[Sergeant Taylor:] I would charge trafficking.

[Prosecutor:] 15?

[Sergeant Taylor:] I would charge trafficking.

. . . .

9

[Prosecutor:] Now, have all of these people possessed the additional material that you have referenced earlier[,] cell phones, ledgers, crack pipes, scales?

[Sergeant Taylor:] No.

[Prosecutor:] Have some of them just possessed the rocks themselves?

[Sergeant Taylor:] Yes.

[Prosecutor:] If somebody were to have 19 rocks, 16 rocks, and have that in conjunction with multiple cell phones—well, let me ask you, have you ever encountered somebody who was similarly situated?

[Sergeant Taylor:] Yes.

[Prosecutor:] And have you charged them with a crime?

[Sergeant Taylor:] Yes.

[Prosecutor:] What was the crime?

[Sergeant Taylor:] Trafficking.

[Prosecutor:] Why did you charge them with trafficking?

[Sergeant Taylor:] Because I . . . felt that was the proper charge; the totality of the evidence, the amount, and the other circumstances surrounding.

[Prosecutor:] What are some of those other circumstances?

[Sergeant Taylor:] The way my interview would go with them. Again, the other evidence found. If they're—sometimes I would find large amounts of money. I would find, you know, packaging or phones or scales or anything like that.

**{27}**     Defendant asserts that Sergeant Taylor testified that "anyone possessing more than five rocks of crack cocaine should be and would be arrested and charged as a narcotics trafficker[.]" And, based on that premise, Defendant argues that Sergeant Taylor's testimony was "the equivalent of testifying as a matter of law, rather than as a matter of fact." Defendant then asserts that this testimony was improper because "expert witness[ testimony] is, in general, confined to matters of fact, as distinguished from matters of law[.]" *Beal v. S. Union Gas Co.*, 66 N.M. 424, 437, 349 P.2d 337, 346 (1960) (internal quotation marks and citation omitted).

10

**{28}** We do not agree with Defendant's interpretation of Sergeant Taylor's testimony. Contrary to Defendant's assertion, Sergeant Taylor did not testify as to what "should" or "would" happen to anyone in possession of more than five rocks of cocaine; rather, her testimony was based on her past experiences and related to charging decisions that she had made as an arresting officer, based on the circumstances then before her. Thus, rather than testifying as to a matter of law, Sergeant Taylor related her field experience to assist the jury in determining Defendant's intent. Such testimony did not exceed the bounds of admissible expert testimony. *See, e.g.*, *State v. Grant*, 722 N.W.2d 645, 648 (Iowa 2006) ("[I]n controlled-substance prosecutions[,] opinion testimony by law enforcement personnel experienced in the area of buying and selling drugs may be offered as evidence for purposes of aiding the trier of fact in determining intent."). Defendant's argument is based on a mistaken view of Sergeant Taylor's testimony, and the argument provides no basis for reversal.

**{29}** Defendant further argues that as a matter of law, Sergeant Taylor's testimony exceeded the boundaries of allowable expert testimony because "[a] police officer should not be allowed to testify that a defendant is guilty of the crime of trafficking." In the context of officers testifying as to personal use versus possession of narcotics, the distinction between admissible versus inadmissible expert testimony depends on whether the officer testified directly as to the defendant's intent. *See, e.g.*, *State v. Vilalastra*, 540 A.2d 42, 44, 47 (Conn. 1988) (explaining that the prosecution "could have solicited [a detective's] opinion concerning whether [evidentiary] items are commonly used by drug sellers, but it was improper to inquire whether in [his] expert opinion the defendant was a drug seller or user based on the items found"). Thus, a number of courts have held that it is impermissible for an officer, testifying as an expert or otherwise, to state their opinion of the defendant's guilt. *See, e.g.*, *id.* (explaining that it was improper for an officer testifying as an expert to offer an "opinion [as to whether] the defendant was a drug seller or user"); *Fluellen v. State*, 703 So. 2d 511, 513 (Fla. Dist. Ct. App. 1997) (concluding that the trial court erred in permitting an officer to testify that "the quantity of cocaine possessed by the [defendant] indicated that [he] possessed the drug with the intent to sell, rather than for personal use"); *State v. Ogg*, 243 N.W.2d 620, 621 (Iowa 1976) (holding that it was error for the court to permit an officer to testify that the amount of LSD in the defendant's possession exceeded what one might possess for personal use); *see also State v. Ashley*, 1997-NMSC-049, ¶¶ 18-19, 124 N.M. 1, 946 P.2d 205 (reversing the defendant's bigamy conviction based, in part, on the testimony of the non-expert investigating officer who essentially concluded that based on the facts of the defendant's case, he believed the defendant to be guilty of the crime of bigamy).

**{30}** On the other hand, an officer may testify as an expert and offer his or her opinion as to a trafficking amount versus personal use amount of narcotics. *See, e.g.*, *People v. Atencio*, 140 P.3d 73, 76 (Colo. App. 2005) (permitting an officer to testify as an expert regarding the distinction between personal use amounts versus distribution amounts of cocaine and methamphetamine); *Melton v. State*, 824 So. 2d 948, 950 (Fla. Dist. Ct. App. 2002) (stating that it was permissible for an officer testifying as a "street-level" narcotics expert to testify

11

that a typical user carries one or two pieces of crack cocaine, while a typical seller carries anywhere from one to fifty pieces (internal quotation marks omitted)); *Yates v. State*, 699 S.E.2d 43, 44 (Ga. Ct. App. 2010) ("A qualified expert may offer opinion testimony regarding his knowledge of the amount of crack cocaine one would generally possess for personal use or the amount which might evidence distribution.").

**{31}**     Defendant argues that Sergeant Taylor invaded the province of the jury by testifying that "someone similarly situated to Defendant should be charged with . . . trafficking." (Internal quotation marks omitted.)  Thus, Defendant argues, Sergeant Taylor's testimony was similar to the impermissible testimony discussed in *Ashley*, *Vilalastra*, *Fluellen*, and *Ogg*.  We disagree.

**{32}**     Read in context, Sergeant Taylor testified that she had, in her experience as an officer, charged unnamed arrestees with trafficking when they had sixteen to nineteen rocks of cocaine.  She testified that her charging decisions in those cases were based on the circumstances, including interviews of the arrestees, which led her to believe trafficking was an appropriate charge.  She did not relate those cases to Defendant's case.  Sergeant Taylor was not asked, nor did she offer, her opinion as to whether Defendant was trafficking cocaine.  For that reason, her testimony is more aptly compared with the testimony held to be admissible by the courts in *Atencio*, *Melton*, and *Yates.*  Defendant has not provided on-point or persuasive authority to demonstrate that testimony comparable to Sergeant Taylor's testimony constitutes reversible error.  Accordingly, Defendant has provided no basis for reversal.

**{33}**     Moreover, our Rules of Evidence permit experts to testify on matters that "embrace[]" ultimate issues of fact.  Rule 11-704 NMRA (stating that "[a]n opinion is not objectionable just because it embraces an ultimate issue"); *State v. Lopez*, 84 N.M. 805, 810, 508 P.2d 1292, 1297 (1973) ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." (internal quotation marks and citation omitted)).  Here, Sergeant Taylor did not offer an opinion as to the ultimate issue of fact—that is, whether Defendant had an intent to distribute the cocaine to another.  To the extent that her testimony embraced the ultimate issue by educating the jury in regard to what factors, in her experience, warranted a trafficking charge, it was nevertheless admissible.  *See* Rule 11-704; *see also Torres*, 2005-NMCA-070, ¶ 32 (recognizing that an officer's expert testimony is admissible "even if it touches upon an ultimate issue" (internal quotation marks and citation omitted)); *Atencio*, 140 P.3d at 75-76 (stating that an officer testifying as an expert witness did not invade the province of the jury by stating that the amount of drugs seized from the defendant was consistent with an intent to distribute, because the officer did not testify that the defendant intended to distribute them).

**{34}**     Sergeant Taylor's testimony did not detract from the jury's ability to independently draw conclusions based on all of the evidence presented at trial.  That evidence included Defendant's counsel's vigorous cross-examination of Sergeant Taylor, and it also included

the presentation of Defendant's own expert, a former crack cocaine addict qualified to testify as to what amount of crack he purchased for his personal use. The presentation of a rebuttal expert witness and vigorous cross-examination are the "traditional and appropriate means of attacking shaky but admissible evidence." *State v. Anderson*, 118 N.M. 284, 302, 881 P.2d 29, 47 (1994) (internal quotation marks and citation omitted). The jury was free to accept or to reject Sergeant Taylor's testimony. *Torres*, 2005-NMCA-070, ¶ 32. The district court did not abuse its discretion in admitting Sergeant Taylor's testimony.

**{35}** On a final note, in regard to the admissibility of Sergeant Taylor's testimony, we acknowledge that there is somewhat of a fine line between (1) testimony as to typical users and traffickers based on the amount of drugs in their possession, and (2) testimony as to whether the amounts in the possession of the subject defendant indicated a purpose to traffic and not to use. We further recognize that using language such as "embraces an ultimate issue" may not adequately assist the district court in this context. Based on the amounts of drugs possessed, it is difficult to determine when an expert crosses the fine line constituting error when testifying about whether the person possessing drugs intends to use or traffic those drugs.

**{36}** We nevertheless see no reason why a qualified law enforcement expert should not be permitted to testify as to his or her training, knowledge, and experience relating to indicia and likelihood of possession for trafficking rather than solely for use. Defendant concedes that the "amount of drugs for use versus for trafficking [is] not typically within a layperson's knowledge[.]" A defendant can cross-examine and supply a counterexpert or other witness, as Defendant did in this case.

**{37}** The type of testimony given by Sergeant Taylor as to typical circumstances in law enforcement can assist the jury in understanding intent as to drug use versus drug trafficking. Although appearing to be close to the line as it necessarily is when testifying to typical circumstances and an officer's charging rationale, we cannot say that Sergeant Taylor's expert testimony crossed the line into the forbidden territory of an ultimate jury determination of Defendant's guilt or innocence.

## C.    Closing Argument

**{38}** Defendant argues that the "error in allowing [Sergeant] Taylor to testify . . . was compounded by the State's reliance on the testimony during closing argument." We do not find this argument persuasive. First, we have already concluded that Sergeant Taylor's testimony did not constitute reversible error. And second, Defendant did not preserve this argument for appeal by making this argument in the district court. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon); *State v. Salazar*, 2006-NMCA-066, ¶ 20, 139 N.M. 603, 136 P.3d 1013 (declining to consider an appellate argument concerning alleged error during closing argument where there had not been a

13

timely objection in the district court).  Accordingly, this argument provides no basis for reversal.

**D.      The Rule 11-403 NMRA Argument**

**{39}**   Pursuant to Rule 11-403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Defendant argues that the value of Sergeant Taylor's testimony was "far outweighed by its prejudicial effect."  She argues that the testimony "was at best confusing; at worst, it was misleading."  More specifically, Defendant claims that Sergeant Taylor

> was presented to the jury as though she had some official authority to dictate a 'magic number' of rocks of crack [cocaine] that would support an inference of trafficking.  Even if no other evidence was found, [Sergeant] Taylor testified[] she would arrest anyone in possession of the number of rocks of crack [cocaine] that were found in Defendant's pickup. . . .   [T]hus suggest[ing] that no real work was necessary for the jury.

Defendant does not provide a citation to the record indicating that this argument was preserved for our review.  *See* Rule 12-213(A)(4) NMRA (requiring the brief in chief to explain how the issue was preserved and to include citations to the record, transcript, or exhibits relied on).  Nor do we, from our review of the transcript, believe that Defendant objected to Sergeant Taylor's testimony on the ground that it was more prejudicial than probative.  *See Varela*, 1999-NMSC-045, ¶ 25 (stating that in order to preserve an issue for appeal, the defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon).  Accordingly, we will not further consider Defendant's Rule 11-403 argument.

**V.      Defendant's Ineffective Assistance of Counsel Argument**

**{40}**   Defendant argues that she received ineffective assistance of counsel.  First, she faults her counsel for having "agreed to withdraw a lesser[-]included offense instruction on possession of cocaine, allowing the jury to decide either to convict Defendant of trafficking or acquit her entirely."  Second, she faults her counsel for having allegedly advised her to leave a drug rehabilitation program to spend time with her family because, according to Defendant, her counsel "believed a sentence of incarceration was inevitable, and therefore Defendant 'might as well' leave the rehabilitation program."  Defendant further argues that her decision to leave the rehabilitation program angered the district court, and her conditions of release were revoked and she was remanded to jail.  "Claims of ineffective assistance of counsel are reviewed de novo."  *State v. Sotelo*, 2013-NMCA-028, ¶ 31, 296 P.3d 1232, *cert. denied*, 2013-NMCERT-001, 299 P.3d 863.

14

**{41}** To prove ineffective assistance of counsel, Defendant must show (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that she was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. Defendant fails to show how her counsel's allegedly deficient performance met either of the two requirements for a prima facie showing of ineffective assistance of counsel. Accordingly, we see no basis on which to conclude that her counsel was ineffective. Notwithstanding our determination, Defendant is not precluded from pursuing her ineffective assistance of counsel claim through habeas corpus proceedings. *See Torres*, 2005-NMCA-070, ¶ 13 (explaining that where the defendant fails to make a prima facie case of ineffective assistance of counsel on appeal, the claim may be raised in habeas corpus proceedings).

**CONCLUSION**

**{42}** We affirm Defendant's conviction of trafficking, by possession with intent to distribute.

**{43}** **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Rael-Gallegos*, No. 30,349**

**APPEAL AND ERROR**
Substantial or Sufficient Evidence

**ATTORNEYS**
Effective Assistance of Counsel

**CONSTITUTIONAL LAW**
Confrontation
Right to Confrontation

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Closing Argument
Expert Witness
Peace Officer
Prejudice
Right to Confrontation

**EVIDENCE**
Expert Witness
Personal Knowledge
Prejudicial Evidence
Probative Value vs. Prejudicial Effect
Scientific Evidence & *Daubert* Standard
Substantial or Sufficient Evidence