STATE V. BEARD

This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**BRIAN BEARD,**
**Defendant-Appellant.**

A-1-CA-35014

COURT OF APPEALS OF NEW MEXICO

January 31, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Alisa A. Hadfield, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, John Kloss, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Mary Barket, Assistant Appellate Defender, Santa Fe, NM, for Appellant

**JUDGES**

JULIE J. VARGAS, Judge. WE CONCUR: LINDA M. VANZI, Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** JULIE J. VARGA

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Defendant Brian Beard appeals his convictions for trafficking by possession with intent to distribute; tampering with evidence; resisting, evading, or obstructing an officer;

possession of drug paraphernalia; and battery upon a peace officer. Defendant raises the following issues: double jeopardy, improper expert witness testimony, sufficiency of the evidence, improper prosecutorial comment on his right to remain silent, and improper exclusion of his proposed jury instructions. We conclude Defendant's convictions for both battery upon a peace officer and resisting, evading, or obstructing an officer violate the prohibition against double jeopardy. We therefore remand to the district court to vacate Defendant's conviction for resisting, evading, or obstructing an officer. We affirm Defendant's remaining convictions.

## BACKGROUND

**{2}** Detectives Daniel Porter and Erik Meek witnessed what appeared to be a drug transaction between a female and Defendant. They approached Defendant, who was alone inside his vehicle with the driver-side window down. Unable to exit his vehicle, Defendant kicked Detective Porter twice through the driver-side window, and then attempted to climb through that window. The detectives ultimately arrested Defendant and discovered a bag containing thirteen crack cocaine rocks in between his buttocks. Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of the pertinent facts for our analysis.

## I. DISCUSSION

**{3}** Defendant argues the following issues on appeal: (1) his convictions for battery upon a peace officer and resisting, evading, or obstructing an officer constitute multiple punishments for the "same offense" as prohibited by the double jeopardy clauses of the United States and New Mexico Constitutions; (2) the district court erred in permitting Detective Porter to testify as an expert witness; (3) the State did not produce sufficient evidence to support Defendant's convictions for trafficking by possession with intent to distribute and tampering with evidence; (4) the district court erred in failing to grant a mistrial after the State commented on Defendant's silence; and (5) the district court erred in refusing to give jury instructions on self-defense and unlawfulness related to the battery charges. We address each argument in turn.

## A. Defendant's Convictions for Both Battery Upon a Peace Officer and Resisting, Evading, or Obstructing an Officer Violate the Prohibition Against Double Jeopardy

**{4}** The United States and New Mexico Constitutions both prohibit any person from being "twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. "Defendant need not have preserved this issue in order to raise it on appeal." *State v. Sotelo*, 2013-NMCA-028, ¶ 18, 296 P.3d 1232. "Double jeopardy presents a question of law, which we review de novo." *Id.* (internal quotation marks and citation omitted). The double jeopardy prohibition against multiple punishments "relates to two general categories of cases: cases in which a defendant has been charged with multiple violations of a single statute based on a single course of conduct, known as

'unit of prosecution' cases; and cases in which a defendant is charged with violations of multiple statutes for the same conduct, known as 'double-description' cases." *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. Defendant raises a double-description argument, arguing he was convicted of battery upon a peace officer and resisting, evading, or obstructing an officer based on the same conduct.

**{5}** Our Supreme Court "synthesized the many varied theories set forth in both New Mexico and federal decisional law to come up with a single test for multiple punishment cases." *State v. Frazier*, 2007-NMSC-032, ¶ 14, 142 N.M. 120, 164 P.3d 1 (citing *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223). "The synthesis performed in *Swafford* resulted in our [Supreme Court's] adoption of what is generally a two-part inquiry for double-description claims, first analyzing whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes, and, if so, proceeding to analyze whether the [L]egislature intended to create separately punishable offenses." *State v. Gutierrez*, 2011-NMSC-024, ¶ 51, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted).

## 1. Unitary Conduct

**{6}** Defendant asserts his conduct underlying the convictions for battery upon a peace officer and resisting, evading, or obstructing an officer was unitary. "Separate punishments are permissible and conduct is not unitary if the offenses are separated by sufficient indicia of distinctness." *State v. Ford*, 2007-NMCA-052, ¶ 12, 141 N.M. 512, 157 P.3d 77 (internal quotation marks and citation omitted). "To determine whether a defendant's conduct was unitary, we consider such factors as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and a defendant's goals for and mental state during each act." *Id.* "The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted).

**{7}** The conduct underlying Defendant's convictions for battery upon a peace officer and resisting, evading, or obstructing an officer was unitary. Defendant's convictions were based on his actions following Detective Porter and Detective Meek's approach. After the detectives announced their presence, Defendant attempted to open the driver-side door with his left hand while his right hand was behind his back. To prevent Defendant from exiting the vehicle, Detective Porter pressed his body against the door. Defendant then attempted to open the door with both hands before realizing Detective Porter was holding it shut. With the window already rolled down, Defendant rotated onto his back, put his feet up, and kicked Detective Porter twice in the chest. When Defendant kicked Detective Porter the second time, Detective Porter grabbed Defendant's legs.

**{8}** Seeing this, Detective Meek ran from the passenger side toward the driver-side to assist Detective Porter. As Detective Meek ran to the driver-side, Defendant "squatted his body" and attempted to either lunge toward the passenger-side door or escape from Detective Porter's grasp. Detective Meek ran back toward the passenger-side of the vehicle, and Detective Porter continued to hold onto Defendant's legs. With both legs out of the driver-side window, Defendant reached out of the driver-side window, grabbed the top of his vehicle, and attempted to pull himself through the window. As Defendant was doing this, Detective Porter "pressed him back in the vehicle, trying to . . . hold him back in the vehicle." Detective Porter then pulled out his gun, at which point Defendant followed Detective Porter's orders and was ultimately arrested.

**{9}** The State acknowledges that the record does not establish much separation of time between the acts constituting the bases for the two separate charges. The record further establishes that these events occurred in the same space and in close sequence, and involved the same victim. After being told by the detectives to show his hands, Defendant attempted to exit the vehicle. Unable to do so, Defendant kicked Detective Porter through the open driver-side window, proceeded to lunge toward the passenger-side door, and attempted to escape through the driver-side window. Moreover, the acts were similar. Defendant's acts of resisting, abusing, and kicking Detective Porter all occurred after Detective Porter announced his presence and told Defendant to show his hands. Thus, all of these acts together could reasonably be viewed as having originated from Detective Porter's attempt to investigate a possible narcotics transaction while at the same time ensuring his and Detective Meek's safety. Finally, Defendant's goals for and mental state during each act support a conclusion that Defendant's conduct was unitary. All of the acts could reasonably be viewed as stemming from Defendant's goal of resisting or abusing Detective Porter as he performed his duties.

**{10}** The parties rely on different opinions from this Court to support their argument in favor of or against the conduct being unitary. *Compare Ford*, 2007-NMCA-052, ¶¶ 13-16 (concluding a defendant's conduct where he kicked an officer while being arrested and handcuffed was unitary for purposes of battery of an officer and resisting, evading, or obstructing an officer), *with State v. Lopez*, 2008-NMCA-111, ¶¶ 10, 12-13, 144 N.M. 705, 191 P.3d 563 (concluding a defendant's flight from, and subsequent returning to and punching of, an officer were not unitary for purposes of battery of an officer and resisting, evading, or obstructing an officer). While the defendant in *Ford* was being arrested, he attempted to "loosen" the officers' grip on him and kicked one officer in the leg as they handcuffed him. 2007-NMCA-052, ¶ 13. We held that because the defendant's acts of resistance and battery occurred close in time and were "similar," his conduct was unitary. *Id.* ¶¶ 13-16. In *Lopez*, an officer pulled over the defendant's vehicle, at which point the defendant exited his vehicle and ran away. 2008-NMCA-111, ¶ 2. After being chased by the officer for quite some time, the defendant "turned to face the officer, taking a defensive attack posture, . . . [and] punched him twice in the face[.]" *Id.* ¶¶ 2-3 (internal quotation marks omitted). This Court held the defendant's "conduct in returning to the officer and punching him in the face constituted a change from his act of

fleeing sufficient to determine that the two offenses were not unitary." *Id.* ¶ 10. Additionally, we distinguished the "protracted fleeing[,]" stopping, changing course, physically confronting and punching the officer, present in *Lopez*, from the acts in *Ford* because the defendant's acts in *Ford* of resistance and battery were similar, little time elapsed between the events, and the acts could "arguably be characterized as incidental contact during an arrest and part of the struggle that constituted the resisting of that arrest[.]" 2008-NMCA-111, ¶¶ 11-12.

**{11}** Before applying either *Ford* or *Lopez* to the case at hand, we note that resisting, evading, or obstructing an officer is an offense that may be charged in four alternate ways. *See* NMSA 1978, § 30-22-1 (1981). Our differing analyses in the two cases appear to be based in part on two different ways of charging under the statute. *Compare Ford*, 2007-NMCA-052, ¶ 18 (noting that the state charged the defendant with violating Section 30-22-1(D)), *and* § 30-22-1(D) ("Resisting, evading or obstructing an officer consists of . . . resisting or abusing any . . . peace officer in the lawful discharge of his duties."), *with Lopez*, 2008-NMCA-111, ¶¶ 10, 12 (explaining that the defendant engaged in the act of "fleeing," but not specifying which subsection of Section 30-22-1 the defendant was charged with violating), *and* § 30-22-1(B) ("Resisting, evading or obstructing an officer consists of . . . intentionally *fleeing*, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him[.]" (emphasis added)). As Defendant was charged with violating Section 30-22-1(D) rather than Section 30-22-1(B), and because his acts were similar, close in time, place, and sequence, and appear to stem from the same goal, *Ford* is applicable to the case at hand and we conclude Defendant's conduct was unitary. We therefore proceed to the second part of the *Swafford* analysis.

## 2. Legislative Intent

**{12}** "The sole limitation on multiple punishments is legislative intent, and, unless the Legislature clearly authorized multiple punishments, we apply the test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine that intent." *Franco*, 2005-NMSC-013, ¶ 12 (alterations, internal quotation marks, and citations omitted). *Blockburger* provides, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. "[T]he proper inquiry focuses upon the elements of the statutes in question—the evidence and proof offered at trial are immaterial." *Swafford*, 1991-NMSC-043, ¶ 10. However, our Supreme Court modified the *Blockburger* test, holding that "[i]f the statute is vague and unspecific, or written in the alternative, courts must consider the [s]tate's legal theory in assessing whether each provision requires proof of a fact which the other does not." *State v. Swick*, 2012-NMSC-018, ¶ 12, 279 P.3d 747 (internal quotation marks and citations omitted). When the Legislature has not expressed its intent to punish the same conduct under more than one statute, "and one statute is subsumed by the other, then convictions for both cannot stand." *Id.* ¶ 24. Furthermore, "[a]s *Swafford* suggested, we treat statutes written

in the alternative as separate statutes for purposes of the *Blockburger* analysis." *Franco*, 2005-NMSC-013, ¶ 14.

**{13}**     As this Court has previously held, Section 30-22-1(D) (resisting, evading or obstructing an officer) is a lesser offense of NMSA 1978, Section 30-22-24 (1971) (battery upon a peace officer). *Ford*, 2007-NMCA-052, ¶ 19. In *Ford*, we stated:

> Under a statutory analysis, Section 30-22-1(D) requires resisting or abusing the officer who is performing his duties. Section 30-22-24 refers to the same officer and the same duties. It requires a touching or application of force in a rude, insolent, or angry manner. In a discussion concerning "rude, insolent or angry," it is indicated [in *State v. Padilla*, 1983-NMCA-096, 101 N.M. 78, 678 P.2d 706, *aff'd in part, rev'd in part on other grounds by* 1984-NMSC-026, 101 N.M. 58, 678 P.2d 686] that one cannot resist or abuse without being rude, insolent, or angry. The only difference is that battery requires the resisting or abusing to have culminated in a touching, while resisting also prohibits lesser forms of resisting. Stated otherwise, one cannot commit battery on a peace officer without also resisting or abusing that officer contrary to Section 30-22-1(D).

*Ford*, 2007-NMCA-052, ¶ 19; *see State v. Diaz*, 1995-NMCA-137, ¶ 13, 121 N.M. 28, 908 P.2d 258 ("Since a defendant cannot resist or abuse an officer without being rude, insolent, or angry, the difference between Section 30-22-24 and Section 30-22-1(D) is that a violation of the former culminates in an offensive touching while a violation of the latter does not. Thus, a defendant cannot commit peace officer battery without having also resisted or abused an officer."). Defendant's conviction for violation of Section 30-22-24 subsumed his conviction for violation of Section 30-22-1, placing Defendant in double jeopardy. We therefore vacate Defendant's conviction for resisting, evading, or obstructing an officer.

**B.     The District Court Did Not Err in Permitting Detective Porter to Testify as an Expert Witness**

**{14}**     Defendant next contends the district court erred in allowing Detective Porter to testify as an expert witness. Defendant's argument is based on the State's failure to provide Defendant with advance notice of its intent to call Detective Porter as an expert witness, Detective Porter's limited experience, and the unreliability of Detective Porter's expert testimony.

**1.     Notice**

**{15}**     Defendant first argues that the district court erred in allowing Detective Porter to testify as an expert witness because the State did not provide timely notice of its intent to call the detective as an expert. In its initial disclosure of witnesses, filed on April 12, 2011, the State notified the district court and defense counsel of its intent to call Detective Porter as a witness. Although defense counsel asserted he had not received notice that Detective Porter would be called as an expert, the State filed an amended

notice, stating it intended to call Detective Porter as an expert witness "regarding the trafficking of narcotics[,]" more than two weeks before the date of trial. Defendant argues this late disclosure violated both Rule 5-501 NMRA and Rule 5-505 NMRA.

> In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the [district] court cured the failure to timely disclose the evidence.

*State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701 (internal quotation marks and citation omitted).

**{16}** To establish the State's breach of a duty, Defendant relies primarily on Rule 5-501 (amended in 2015, effective December 31, 2015), which provides that "within ten (10) days after arraignment . . . the state shall disclose or make available to the defendant . . . a written list . . . identifying any witnesses that will provide expert testimony and indicating the subject area in which they will testify[.]" Rule 5-501(A)(5) (2015). However, the version of Rule 5-501 that was in effect at the time of trial provided no such requirement. *See* Rule 5-501(A)(5) (2013) (providing that "within ten (10) days after arraignment . . . the state shall disclose or make available to the defendant . . . a written list of the names and addresses of all witnesses which the prosecutor intends to call at trial, together with any statement made by the witness and any record of prior convictions of any such witness which is within the knowledge of the prosecutor"). The State being under no obligation to identify Detective Porter *as an expert witness* under the rule as written at the time, we cannot say that it violated either Rule 5-501 or Rule 5-505(A) (2014) ("If, subsequent to compliance with Rule 5-501 . . ., and prior to or during trial, a party discovers additional material or witnesses *which he would have been under a duty to produce or disclose at the time of such previous compliance* if it were then known to the party, he shall promptly give written notice to the other party[.]" (emphasis added)).

**{17}** Relying on *Shamalon Bird Farm, Ltd. v. United States Fidelity & Guaranty Co.*, 1991-NMSC-039, 111 N.M. 713, 809 P.2d 627, and *State v. Orona*, 1979-NMSC-011, 92 N.M. 450, 589 P.2d 1041, Defendant nonetheless argues that notwithstanding the absence of language related to expert witnesses in the 2013 version of Rule 5-501, he suffered prejudice from the inability to pursue a potential line of defense. *Shamalon* held the district court did not abuse its discretion in excluding the plaintiff's expert witness's testimony in part because the plaintiff notified the defense of its intent to call the expert witness late in the proceeding, and the defense would therefore "not have adequate time to prepare their cross-examination and trial strategy[.]" 1991-NMSC-039, ¶¶ 2-3, 7. In reaching its conclusion, however, our Supreme Court relied on Rule 1-026(B)(5)(a) NMRA (1989), which provided that "[a] party may . . . require any other party to identify each person whom the other party expects to call as an expert witness at trial[.]"

*Shamalon*, 1991-NMSC-039, ¶ 7. As we have stated above, Rule 5-501 (2013) included no such language.

**{18}** *Orona* provides that "[n]o more prejudice need be shown than that the [district] court's order may have made a potential avenue of defense unavailable to the defendant." 1979-NMSC-011, ¶ 8. However, *Orona* involved the district court's order preventing defense counsel from interviewing the state's main witnesses. *Id.* ¶ 3. The district court took no such action here. Indeed, defense counsel had ample opportunity to interview Detective Porter following the State's initial disclosure of witnesses. Application of both *Shamalon* and *Orona* to the case at hand is therefore misplaced.

**{19}** Defendant further argues the State's disclosure did not comport with his due process rights, relying on *State v. Schoonmaker*, 2008-NMSC-010, ¶¶ 6-7, 40, 143 N.M. 373, 176 P.3d 1105 (concluding that under the Sixth Amendment to the United States Constitution, the district court should have granted defense counsel's request to withdraw so the public defender could assume the defense costs), *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 38, 332 P.3d 850; *State v. Allison*, 2000-NMSC-027, ¶¶ 6, 9, 16, 129 N.M. 566, 11 P.3d 141 (holding that to avoid "unwarranted prejudice which could arise from surprise testimony[,]" the state had a duty under the rules of criminal procedure to disclose an unrelated arrest report to defense counsel before the defendant testified); and, *Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶¶ 3-6, 13, 129 N.M. 639, 11 P.3d 603 (explaining, in a civil case, that the party's intentional deception during discovery undermined the design of the process, which "is to avoid surprise in trial preparation and promote the opposing party's ability to obtain the evidence necessary to evaluate and resolve the dispute" (alteration, internal quotation marks, and citation omitted)). These cases, however, do not support Defendant's assertion that the State's late disclosure violated Defendant's due process rights.

**{20}** Regardless, even if we assume the State violated some duty, Defendant fails to establish materiality or prejudice. "The test for materiality, the second factor, is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted). Similarly, "determining whether the defendant has been prejudiced, the third factor, [requires that] we look at whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." *Id.* (alteration, internal quotation marks, and citation omitted). Defendant argues the State's late notice prevented him from more thoroughly exploring Detective Porter's expertise and proposed expert testimony, and from obtaining his own expert witness. Defendant "has not shown how his cross-examination would have been improved by an earlier disclosure or how he would have prepared differently for trial." *McDaniel*, 2004-NMCA-022, ¶ 14 (rejecting the defendant's argument that his cross-examination or pre-trial preparation would have improved by an earlier disclosure because "[t]he question of whether additional discovery might have benefitted the defense is pure speculation" (alteration, internal quotation marks, and citation omitted)). Moreover, Defendant filed

no motions for a continuance before trial when the State filed its amended witness notice listing Detective Porter as an expert, nor did he seek one when the State tendered Detective Porter as an expert witness during trial. *See State v. Barraza*, 1990-NMCA-026, ¶ 13, 110 N.M. 45, 791 P.2d 799 (concluding a defendant's failure to seek a continuance undermines his claim of unfair surprise). Defendant has failed to demonstrate either materiality or prejudice.

**{21}** We note that the district court neither explicitly ruled on nor took measures to cure the alleged late disclosure issue. However, in light of the other factors, we decline to reverse Defendant's convictions on these grounds.

## 2. Detective Porter's Experience

**{22}** Defendant also argues the district court erred in permitting Detective Porter to testify as an expert in differentiating between personal use and trafficking quantities of crack cocaine because he lacked sufficient experience. Rule 11-702 NMRA provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue.

"A witness may be admitted as an expert under Rule 11-702 upon the satisfaction of three requirements: (1) that the expert be qualified; (2) that the testimony will assist the trier of fact; and (3) that the expert's testimony concern scientific, technical or other specialized knowledge." *State v. Ruffin*, ___-NMCA-___, ¶ 18, ___P.3d___ (No. A-1-CA-35424, Oct. 22, 2018) (internal quotation marks and citation omitted). "We review the [district] court's admission of expert testimony for an abuse of discretion." *State v. Torrez*, 2009-NMSC-029, ¶ 9, 146 N.M. 331, 210 P.3d 228.

**{23}** Detective Porter testified that he had worked with the Albuquerque Police Department (APD) since 1997, and was "sworn since 1999." He worked in the Southeast Area Command for two years, responding to any community needs and doing "some undercover work." He then spent two years in the Gang Unit in an undercover capacity. While in an undercover capacity, Detective Porter purchased and sold narcotics, including crack cocaine. He testified to selling "small quantities" of crack cocaine and estimated he had made fifty or more purchases of narcotics while undercover.

**{24}** For approximately half a year, Detective Porter worked in the Central Narcotics Team, "which was a mid- to high-level narcotics team" associated with the Region One Task Force. Region One "was a narcotic region working drug cases within the region of New Mexico." In that capacity, he would "work any narcotic complaints or investigations" in the task force region. After APD "pulled out of the region task force" Detective Porter "became a detective in a street narcotics team, the Valley Narcotics Unit[,]" for approximately three and a half years. He then worked for approximately two years in the

Middle Rio Grande Valley Task Force. Following his time with the Middle Rio Grande Valley Task Force, Detective Porter worked as a task force officer with the Drug Enforcement Administration (DEA) Task Force for approximately one year. As a task force officer, Detective Porter assisted in DEA investigations "for middle to high quantities" of narcotics and started his own investigations.

**{25}**     Detective Porter moved to the Criminal Intelligence Unit for approximately two years, where he worked with informants. He spent his last year in the unit as an acting sergeant. Following his time in the Criminal Intelligence Unit, Detective Porter returned to the APD Gang Unit, where he worked with informants and, because of the "connection" between gangs and drugs, he had the opportunity to work on drug cases. He remained in this position at the time of trial.

**{26}**     Detective Porter also testified about the training he received related to narcotics, describing the numerous classes and conferences he attended regarding narcotics and the narcotics trade. Detective Porter explained that he attended around one thousand hours of narcotics-related classes. Additionally, he undertook over three hundred narcotics-related investigations as either a case agent, a co-case agent, or an assisting officer and sometimes "utilize[d] an informant to assist in these investigations[.]"

**{27}**     In Detective Porter's work with informants, whether they were drug dealers or users, they provided him with information about how much they used on a daily basis. He gathered this information so he could "know what they're buying, how much they're buying, what they're using, [and] how much they're using[.]" Detective Porter would then use this information to ensure an informant's normal purchases were consistent with those made in "controlled buys," wherein they would give the informant, typically a drug user, "a specific amount of money for a specific amount of drugs[.]" Detective Porter learned the "going rates for different narcotics[,]" how a purchase is made, and how different drugs are packaged. Based on the evidence of Detective Porter's background, experience, training, and knowledge in drug transactions, we cannot say that the district court abused its discretion in permitting him to testify as an expert in differentiating between personal use and trafficking quantities. *Torrez*, 2009-NMSC-029, ¶ 9.

### 3.     The Reliability of Detective Porter's Expert Testimony

**{28}**     Defendant argues Detective Porter's expert testimony was unreliable. In determining initially whether expert testimony is competent under Rule 11-702, "the [district] court must exercise its gate-keeping function and ensure that the expert's testimony is reliable." *Torrez*, 2009-NMSC-029, ¶ 21. To the extent Defendant argues Detective Porter's methodology was unreliable, our Supreme Court has made clear that "[t]he requirements that scientific expert testimony be grounded in valid, objective science and reliable enough to prove what it purports to prove are inapplicable to expert testimony that is based on the expert's specialized knowledge." *Id.* (internal quotation marks and citation omitted). It is clear from the record that Detective Porter's expert testimony was based on his knowledge and experience, not on any scientific expertise.

**{29}** "[R]ather than testing an expert's scientific methodology as required under *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] and [*State v. Alberico*, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192], the [district] court must evaluate a non-scientific expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted." *Torrez*, 2009-NMSC-029, ¶ 21. The district court uses an expert's skills, experience, training, or education "to test the validity of the expert's conclusions" and determine whether the conclusions "prove what they purport to prove." *Id.* ¶ 22; *see also Ruffin*, ___-NMCA-___, ¶ 23 (concluding the district court should evaluate whether the expert witness's "conclusions are consistent with his specialized training and experience" when testing the validity of his non-scientific expert testimony).

**{30}** In addition to his experience, Detective Porter testified that in most cases crack cocaine is sold by the rock, not by its weight. He explained that the weight of a crack rock varies with the dealer; some sell rocks that weigh one gram while others sell ".2[,] .4 at most for an individual rock." He testified that in most cases when they would purchase crack cocaine from a low-level dealer, the dealer would "have just maybe a handful of rocks[.]" Furthermore, the low- to mid-level traffickers they arrested were found with a range of three to twenty rocks, an amount he said was consistent with trafficking. Detective Porter testified that based on his training and conversations with informants, people typically use "maybe one to two rocks a day[.]" However, the highest quantity of crack cocaine he had ever heard someone smoke in a day was four rocks. In light of his knowledge and experience, we cannot say Detective Porter's conclusions were unreliable. *See State v. Rael-Gallegos*, 2013-NMCA-092, ¶ 21, 308 P.3d 1016 (explaining that the reviewing court must consider whether the expert witness's "knowledge and experience were sufficient to support a determination that her conclusions regarding the distinction between personal use amounts versus trafficking amounts of crack cocaine may be trusted").

**{31}** Nonetheless, Defendant argues that Detective Porter's expert testimony was unreliable because of his investigative involvement in this case. Defendant relies on *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003), in which the United States Court of Appeals for the Second Circuit noted such involvement confers upon the expert "the aura of special reliability and trustworthiness surrounding expert testimony[.]" *Id.* This Court, however, has recently rejected this concern. *See Ruffin*, ___-NMCA-___, ¶ 31 (noting that our Supreme Court "rejected this proposition" in *Alberico*, 1993-NMSC-047, ¶ 36, when it concluded that the "premise that juries are awed by the aura of the infallibility of expert opinion testimony and thus defer to it is flawed speculation" (internal quotation marks omitted)). The *Dukagjini* court also noted "there is an increased danger that the expert testimony will stray from applying reliable methodology and convey to the jury the witness's 'sweeping conclusions' about [the defendants'] activities[.]" 326 F.3d at 54. Here, again, this Court rejected the *Dukagjini* court's proposition, explaining "that it is the responsibility of the district court to remain vigilant and ensure that the expert not stray from the scope of his/her expertise." *Ruffin*, ___-NMCA-___, ¶ 32. For these reasons, we conclude the district court did not err in permitting Detective Porter to

testify as an expert witness, and we proceed to Defendant's arguments regarding the sufficiency of the evidence.

## C. Defendant's Convictions Were Supported by Substantial Evidence

**{32}** Defendant challenges the sufficiency of the evidence supporting his convictions for trafficking by possession with intent to distribute, as well as tampering with evidence. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37267, Oct. 15, 2018) (internal quotation marks and citation omitted). "In reviewing the sufficiency of the evidence in a criminal case, we must determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue." *Rael-Gallegos*, 2013-NMCA-092, ¶ 8 (internal quotation marks and citation omitted). "Resolving all conflicts, indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary, we view the evidence in the light most favorable to the verdict to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted). "It is for the fact-finder to evaluate the weight of the evidence, to assess the credibility of the various witnesses, and to resolve any conflicts in the evidence; we will not substitute our judgment as to such matters." *Id.* (alteration, internal quotation marks, and citation omitted).

**{33}** With regard to Defendant's trafficking conviction, the jury was instructed that the State must prove beyond a reasonable doubt that Defendant (1) had cocaine in his possession, (2) knew or believed it was cocaine, and (3) intended to transfer it to another. Defendant argues the State did not present sufficient evidence of his intent to distribute. "Intent to distribute may be inferred when the amount of controlled substance possessed is inconsistent with personal use." *State v. Hubbard*, 1992-NMCA-014, ¶ 9, 113 N.M. 538, 828 P.2d 971. "Intent may be proved by inference from surrounding facts and circumstances, such as quantity and manner of packaging of the controlled substance." *Id.*

**{34}** The detectives testified that they first saw Defendant at his home, where they witnessed a vehicle "pull up to" Defendant's home. Defendant exited his home, walked to the vehicle, met with the driver of the vehicle, and returned to his home. After the vehicle left, Defendant entered a vehicle and drove to an Arby's. Detective Porter testified that when Defendant first pulled into the Arby's parking lot, a female approached Defendant's vehicle, leaned into the driver-side window, and reached into the vehicle, which "was consistent with people's hands in the vehicle, like there was an exchange[.]" After a "short time" passed, the female walked towards the Arby's with nothing visible in her hands. Defendant "circled" through the parking lot and pulled into a parking spot, at which point the female walked over to his car and "reached in to talk through [the] passenger window." Detective Porter described this activity as being "consistent with drug trafficking."

**{35}**  Furthermore, Detective Porter explained that an individual possessing a range of three to twenty rocks of crack cocaine was consistent with trafficking. He and Detective Meek recovered a bag containing thirteen rocks of crack cocaine on Defendant's person. Given the quantity of crack cocaine found on Defendant's person, combined with the surrounding circumstances and Detective Porter's expert testimony, we hold that there was sufficient evidence from which the jury could infer Defendant's intent to distribute. *See id.* ¶ 15 (explaining that "[i]f the amount of an illegal drug found in an accused's possession is not by itself sufficient to prove inconsistency with personal use, then the state must present testimony that the amount of drugs in the accused's possession is inconsistent with personal use").

**{36}**  As to the tampering conviction, Defendant's sole argument is that because there was only sufficient evidence of possession, rather than trafficking, he should have been convicted of fourth-degree tampering, not a third-degree felony. *See* NMSA 1978, § 30-22-5(B)(2) (2003) (providing that "if the highest crime for which tampering with evidence is committed is a third degree felony or a fourth degree felony, the person committing tampering with evidence is guilty of a *fourth degree felony*" (emphasis added)). However, as we have concluded above, there was sufficient evidence to support Defendant's conviction for trafficking by possession with intent to distribute, a first-degree felony "for the second and subsequent offenses[.]" NMSA 1978, § 30-31-20(B)(2) (2006). Having been convicted of a first-degree felony due to a prior felony "[t]rafficking or [d]istribution" conviction, Defendant's tampering with evidence conviction is therefore supported by sufficient evidence. *See* § 30-22-5(B)(1) (providing that "if the highest crime for which tampering with evidence is committed is a . . . first degree felony . . ., the person committing tampering with evidence is guilty of a third degree felony").

### D.  The District Court Did Not Err in Denying Defendant's Motion to Dismiss on Grounds That the State Commented on His Right to Remain Silent

**{37}**  Defendant contends the district court erred in denying its motion to dismiss after the State commented on Defendant's right to remain silent. In both his opening statement and closing argument, defense counsel repeatedly stated that Defendant was addicted to crack cocaine. Defendant did not testify, and no evidence was presented to support defense counsel's assertion that Defendant was an addict. During the State's rebuttal argument, it argued, "you have heard no evidence that [Defendant] is a crack addict, none. That never came out of . . . anybody's mouth on the stand." Defendant objected and moved for dismissal, arguing the State implied "the only one that could have said that he was an addict was the person who decided to not testify, based on his Fifth Amendment [r]ight." The district court denied Defendant's motion.

**{38}**  "The privilege against self-incrimination prohibits the prosecutor from commenting on a defendant's failure to testify at trial." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted). "Where the error is preserved, we review a district court's denial of a motion for mistrial on the basis of remarks made in closing argument for an abuse of discretion." *State v. Ramos-Arenas*, 2012-NMCA-117, ¶ 16, 290 P.3d 733 (alterations, internal quotation marks, and

citations omitted). "An abuse of discretion occurs where the district court acts in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Sena*, 2018-NMCA-037, ¶ 7, 419 P.3d 1240, *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-36932, consolidated with No. S-1-SC-36933, May 25, 2018) (internal quotation marks and citation omitted).

{39}    Although Defendant stated in his brief in chief that he moved for a mistrial, the State correctly points out that Defendant moved to dismiss. In so doing, the State appears to argue that Defendant's request for dismissal rather than a mistrial did not sufficiently preserve the issue. We note, however, that in ruling on Defendant's objection, the district court stated, "I will say that I think this is close, but not far enough for a *mistrial*." (Emphasis added.) Moreover, the State asserted it had not commented on Defendant's failure to testify. In light of the district court's ruling and the State's response, we assume for purposes of this appeal that Defendant's objection preserved the issue. *See State v. Griffin*, 2002-NMCA-051, ¶ 5, 132 N.M. 195, 46 P.3d 102 ("The purpose of the preservation requirement is twofold: (1) that the [district] court be alerted to the error so that it is given an opportunity to correct the mistake, and (2) that the opposing party be given a fair opportunity to meet the objection." (internal quotation marks and citation omitted)).

{40}    When reviewing challenges to closing arguments, three factors "carry great influence in our deliberations: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. "In applying these factors, the statements must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.* Taken in context, the State's comment was a very brief part of its rebuttal argument. Moreover, the comment was made in direct response to defense counsel's repeated assertions that were unsupported by the evidence. Accordingly, Defendant failed to show there was a violation of his Fifth Amendment rights. *See Smith*, 2001-NMSC-004, ¶¶ 37, 40 (holding that because it was a brief part of the state's closing argument and was based on evidence presented at trial, there was no violation of the non-testifying defendant's Fifth Amendment rights when the prosecutor stated in her rebuttal argument that there was no testimony to support defense counsel's factual assertion made in closing argument). The district court did not abuse its discretion in denying Defendant's motion.

**E.    The District Court Did Not Err When it Declined to Give Defendant's Jury Instructions**

{41}    Finally, Defendant argues the district court erred in refusing to give jury instructions on self-defense and unlawfulness related to the battery charges. "The propriety of jury instructions is a mixed question of law and fact." *State v. Contreras*, 2007-NMCA-119, ¶ 8, 142 N.M. 518, 167 P.3d 966 (internal quotation marks and citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *Id.*

(alteration, internal quotation marks, and citation omitted). "Viewing the facts in that manner, we review the issue de novo." *Id.* "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *Id.* (internal quotation marks and citation omitted).

**{42}** "[A] self-defense instruction is required whenever or if a defendant presents evidence sufficient to allow reasonable minds to differ as to all elements of the defense." *State v. Ellis*, 2008-NMSC-032, ¶ 15, 144 N.M. 253, 186 P.3d 245 (alteration, internal quotation marks, and citation omitted). "[A] person has only a *qualified* right to assert self-defense against a police officer, because police officers have a duty to make arrests and a right to use reasonable force when necessary." *Id.* "[A]lthough one does have a right to defend oneself from a police officer, it is clear that this right is limited." *Id.* (alterations, internal quotation marks, and citation omitted). "This limitation entitles one to assert self-defense only when the officer is using excessive force." *Id.* ¶ 16.

**{43}** Defendant argued in the district court that the jury could have rejected the detectives' testimonies:

> They inflicted pain upon my client and, therefore, my client, in trying to get away, he kicked or struck one of the police officers. And I believe that is enough for self-defense. Because the inference is that there *could have been* excessive force on the part of the officers, whoever, Porter or Meek, whoever it is. And at that point, my client decided to defend himself, not knowing or perhaps knowing, that they were police officers, but that's for the jury to decide.

(Emphasis added.) Defendant's argument is predicated on the notion that the jury could have found that he kicked Detective Porter *after* either he or Detective Meek made physical contact with Defendant. However, the record demonstrates that Defendant kicked Detective Porter *before* either Detective Porter or Detective Meek used any degree of force on Defendant. There being no evidence to support Defendant's contention that he kicked to defend himself after the detectives had already used force on Defendant, the district court did not err in rejecting his proposed jury instructions. *See State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 ("A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." (internal quotation marks and citation omitted)); *State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162 (explaining that "there must be evidence to support" an instruction on self-defense to warrant giving the instruction).

## II. CONCLUSION

**{44}** We conclude Defendant's convictions for battery upon a peace officer and resisting, evading, or obstructing an officer violate the prohibition against double jeopardy. We therefore remand to the district court to vacate Defendant's conviction for resisting, evading, or obstructing an officer, and to resentence Defendant accordingly.

We further conclude that Defendant's remaining claims of error are without merit and affirm the district court on all other grounds.

**{45}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JENNIFER L. ATTREP, Judge**